# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1901.

| 67 | 1 |
| a68 | 631 |

THE OCEAN GROVE CAMP MEETING ASSOCIATION OF THE METHODIST EPISCOPAL CHURCH v. CHARLES W. SANDERS, JR.

Submitted July 8, 1901—Decided November 11, 1901.

1. The recompense to be paid to the Ocean Grove Camp Meeting Association for the lots demised by the form of lease shown in this case is *rent*, within the meaning of the seventh section of our Landlord and Tenant act, notwithstanding the fact that the lease styles the recompense an assessment as well as a yearly rent, and although its precise amount, not exceeding a stated maximum, is to be fixed annually by the lessor.

2. Under such a lease the notice to be given to the lessee as to the amount of rent due is sufficient if it convey the information required, although, by a clerical error, it, in one of its clauses, misnames the lessee.

3. In fixing the amount of rent no particular form of resolution by the lessor is required, provided the resolution expresses the amount or rate with reasonable certainty, so that the lessee does, or should, understand it.

On questions certified.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, GARRISON and COLLINS.

For the plaintiff, *Samuel A. Patterson.*

For the defendant, *Applegate & Hope.*

The opinion of the court was delivered by

DIXON, J.   The questions in this case that are certified to the Supreme Court by the Monmouth Circuit arise upon the following lease:

"This indenture, made the eleventh day of June, in the year of our Lord one thousand eight hundred and seventy-seven, between the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church of the first part and Charles W. Sanders, Jr., of the city of New York, in the county of New York and State of New York, of the second part, witnesseth that the said party of the first part, for and in consideration of the sum of ten hundred and fifty dollars, lawful money of the United States of America, to them in hand well and truly paid by the party of the second part at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and the yearly assessment or rent, and covenants hereinafter mentioned and reserved to be kept paid and performed, have demised, leased and let and hereby do demise, lease and let unto the said Charles W. Sanders, Jr., his heirs, executors, administrators and assigns, all that certain plot, piece or parcel of ground known and designated as lots Nos. 1320, 1321, 1322, 1323, on the map of lots on camp ground of the said 'The Ocean Grove Camp Meeting Association of the Methodist Episcopal Church,' being a part of the same premises situate in Ocean township, in the county of Monmouth and State of New Jersey, acquired by them, the said party of the first part, by virtue of the authority given by their charter, for the purposes of said corporation, by conveyance to them made by William B. Osborn and wife and David H. Brown and wife by deed dated August 4, 1870, and recorded in book 227 of deeds, for said Monmouth county, pages 57 to 60, to have

and to hold the said lot or parcel of ground and all and singular the premises hereby demised with the appurtenances unto the said Charles.W. Sanders, Jr., his heirs, executors, administrators and assigns, to his and their only proper use, benefit and behoof but for the purposes hereinafter designated and under and subject to the rules and regulations which may from time to time be adopted as to manner of building upon and care of the lot and the buildings and improvements which may be erected thereon, for and during the full end and term of ninety-nine years from this day fully to be completed and ended, renewable to the said Sanders, his heirs and assigns, for a like term of years forever, he and they paying therefor to the said party of the first part, their successors or assigns, as and for a yearly rent for said demised premises not to exceed seven per centum of the sum of six hundred dollars, at such time or times, in each year of said term as the same may be required by said party of the first part, or their successors, or assigns, subject however nevertheless and this lease is granted and accepted accordingly to the regulations which may, from time to time, be adopted and promulgated for the government of the said camp ground, and which are hereby made part of this instrument as fully to all intents and purposes as if they were incorporate herein, and the said party of the second part, for himself and his heirs, executors and administrators, doth covenant, promise and agree with said party of the first part, their successors and assigns, well and truly to pay to them the said assessment as herein aforesaid, within thirty days after notice of the same, and in case the said party of the second part shall persistently neglect or refuse to pay the same, or to observe the hereinafter contained covenant or said regulations or any or either of them or any or either herein contained, it shall be lawful for said party of the first part, their successors or assigns, to enter into and upon said demised premises, and to hold the same as of their former estate or estates, and this lease shall thereupon and from thenceforth be wholly at an end, and the estate hereby granted shall cease and determine, and also that the said party of the second part, his heirs and assigns, shall not, and will

not, at any time hereafter, without the written consent of the said party of the first part, their successors or assigns, use or occupy said demised premises, or any part thereof, or any building or other structure thereon, or suffer or permit the same or any part thereof to be used or occupied as a boarding-house or any mercantile or mechanical trade or purpose whatever, or in any other way or for any purpose except as a temporary residence and seaside resort for and during the term commencing the fifteenth day of May and ending with the thirtieth day of October of each year, and also that the said party of the second part shall not, nor will, at any time during the said term, give, demise, let, assign, set over or in any manner dispose of the hereby demised premises or any part thereof for all or any part of the term hereby granted to any person or persons whatever without the consent and approbation, in writing, of the said party of the first part, their successors and assigns, first had and obtained for that purpose."

The first question certified is whether "the rental reserved in this lease is such a rental as the seventh section of the Landlord and Tenant act applies to, or is it an assessment and not a rental of that character?"

The section referred to is copied from the second section of the English statute (4 *Geo. II., c.* 28), and was first enacted in New Jersey in "An act concerning landlords and tenants," passed March 10th, 1795. Its main object, as stated in the act of 1795, was to get rid of the inconveniences caused by "the many niceties that attend re-entries at common law" for non-payment of rent, and it authorizes a landlord, to whom six months' rent is due and who has a right to enter therefor, to bring his action of ejectment without the formal demand and re-entry required by the common law. It seems applicable to every species of rent between landlord and tenant, provided, of course, the other circumstances mentioned in the statute are present.

"Rent" is defined by Bouvier as "the compensation, either in money, provisions, chattels or labor, received by the owner of the soil from the occupant thereof." Although rent is usually paid in money, yet this species is the ancient "rent

service," which Chief Baron Gilbert defined as "an annual return made by the tenant, either in labor, money or provisions, in retribution for the land that passes" (*Gilb. Rents* 9), the return in money being a substitute for the service originally required. Gilbert further said: "When the services are expressed in the contract the *quantum* must be either certainly mentioned or be such as, by reference to something else, may be reduced to a certainty," and he cites as sufficiently certain a contract to shear all the landlord's sheep in a designated manor. *Id.* 10. This degree of certainty is one of the properties of rent at common law. *Tayl. Land. & T.,* § 369.

Beyond controversy the sum payable under this lease has all the qualities of rent, except, perhaps, certainty. The landlord, the demise of land for a term of years, the tenant, and the annual recompense to be made by the tenant to the landlord for the use of the land, are all embodied in the instrument. We think also that the requisite degree of certainty exists. The lease itself fixes a maximum limit, and within that limit the precise sum is to be ascertained each year by the landlord's requisition upon the tenant. This is as definite as in the case mentioned by Gilbert, where the landlord had control of the number of sheep to be sheared, provided, I suppose, he did not surcharge the pasture of the manor. Although the lease calls the sum thus ascertained an assessment, yet it cannot, under other expressions in the lease, be deemed an assessment in any sense inconsistent with its being also, as the lease styles it, "a yearly rent for the demised premises." It has no resemblance to an assessment levied under the taxing power of government either for general purposes or for special benefit received; it is an assessment only as any charge fixed by one person on another is such.

The seventh section of our Landlord and Tenant act applies to the rent reserved in this lease.

The second question certified is whether the notice in this case, which is in evidence, is in compliance with the terms of this lease, and is it such a notice as would work a forfeiture even if found to have been given?

The *notice* here referred to is *Exhibit 7,* which, at the be-

ginning, is addressed to the defendant by his proper name, and notifies him that the rent of his lots for several designated years, at designated rates, is due, and then proceeds to demand that "you, the said H. M. Sanders," pay the same or incur the forfeiture prescribed in the lease. The objection made to this notice is that in the *demand* it refers to the defendant as "you, the said H. M. Sanders," that being the name of the defendant's brother, who owned four adjoining lots in the Grove. We think it clear that this clerical error did not impair the effect of the writing as a *notice* to the defendant, which is the thing required by the lease, and that even in the *demand* it did not mislead the defendant or leave him in any doubt that he was the person intended. Outside of this *Exhibit 7*, the testimony in the case was such as to present a question of fact whether due notice had not been annually given.

The third question certified is whether the form and method of laying the assessment by the trustees, as proven by the minutes in evidence, was a proper official act for so doing, and did legally levy an assessment under the power conferred by the lease or demise in question.

The following entries in the minutes are samples of the acts of the trustees, so far as recorded:

October 11th, 1886, annual meeting.—"It was ordered to make the assessment six ($6) dollars for 1887."

October 15th, 1890.—"It was ordered to make the assessment for 1891 $7.50 per lot."

These resolutions are very meagre, but they seem to have been understood by all parties as fixing the rent for each lot in Ocean Grove held under the association for the stated year, which for each tenant would be the year of his term beginning or ending in that year, according to his previous payments. If so understood, they were legally sufficient for all the purposes of the lease, since, thus construed, they expressed the will of the landlord, which, within the contractual limit, is untrammeled as to both form and substance.