MONMOUTH COUNTY CIRCUIT COURT.

MARY A. DeKYNE, PLAINTIFF, v. J. ANNA LEWIS AND J. ANNA LEWIS, EXECUTRIX OF THE WILL OF CARRIE LAYMEN, DEFENDANT.

Ejectment—Plaintiff, Living Apart From Her Husband, Assigned Lease Without Husband Joining—Husband Afterward Gave Quit-claim Deed—Plaintiff Now Seeks, After Nineteen Years, to Have Lease Held Void Because Her Husband Did Not Join, Though She Deliberately Executed it for a Sufficient Consideration—Is the Court Permitted to Hold That Her Assignments of Lease was a Conveyance of Her Real Estate?—Lease Covered Land in Ocean Grove Where Leasing is the Prevailing Method—Facts Set Out at Length and Held That the Issue Must be Resolved Against the Plaintiff.

On action at law. In ejectment. On finding of facts and rule for judgment.

LAWRENCE, J. This action was tried before the court, without a jury, by consent of the parties, and is decided on the law deemed applicable to the facts found.

The suit was instituted on May 24th, 1924, by plaintiff to recover possession of three certain lots designated as Nos. 564, 566 and 568 on a map of lots of camp-ground of the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church, at Ocean Grove, Neptune township, in Monmouth county. She alleges that her right to such possession accrued on July 15th, 1903 (probably intended for 1904), but of which she has been wrongfully deprived by defendant.

The facts are:

1. Plaintiff was the daughter of Jessie L. Day, who was the owner of certain leasehold interests in the lots in question, and died seized thereof July 15th, 1904, testate. The latter's will was duly admitted to probate by the surrogate September 22d, 1904, as appears by the record in his office in book N-2 of wills, on pages 364, &c. By it Mrs. Day gave the lots

in question, upon which had been erected a boarding house known as the Bryn Mawr Hotel (also all the goods and chattels therein), to plaintiff, her heirs, executors, administrators and assigns, directing that the interest should vest immediately on the death of testatrix.

2. The muniments of title to the premises are as follows: To lot No. 566, indenture of lease, bearing date October 6th, 1871, made by the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church to Smith E. Hughes, and recorded in the county clerk's office, in book 337 of deeds, on pages 148, &c.; to lot No. 564, indenture of lease, dated August 10th, 1871, made by said camp meeting association to William Dolton, recorded in the county clerk's office, in book 267 of deeds, on pages, 220, &c.; and to lot No. 568, indenture of lease, dated August 18th, 1875, made by the camp meeting association to Charles E. Dugan and recorded in the county clerk's office, in book 328 of deeds, at pages 220, &c. Each of the instruments demised, leased and let the lots in question to the lessee, his executors, administrators and assigns, for and during the full end and term of ninety-nine years from the date thereof, renewable to such lessee, his heirs and assigns, for a like term of years, forever; paying therefor to the lessor (camp meeting association) as and for a yearly rent not to exceed seven per cent. of the consideration paid, at such time or times in each year of the term as the same may be required by such lessor, its successors or assigns. By a series of mesne written assignments of these leases, duly executed, acknowledged and recorded, the records of which were offered in evidence, Mrs. Day, mother of plaintiff, became the owner of these leasehold interests. Plaintiff then acquired them by virtue of the will to which reference is made.

3. On January 27th, 1906, plaintiff, then the wife of George A. DeKyne, but from whom she was living apart, assigned, transferred and set over the original leases, on sufficient consideration, to Leslie H. Crouch and Harry A. Feeder, their executors, administrators and assigns, which assignment was in writing (the record was offered in evidence), duly acknowl-

edged by her, privately, separate and apart from her husband, and recorded in the county clerk's office, in book 766 of deeds, on pages 368, &c. Plaintiff was designated in this assignment as the "wife of George A. DeKyne," but her husband did not join with her in executing it, the reason therefor not appearing other than the fact that they were not living together at the time. On January 29th, 1906, however, her husband made, executed and acknowledged a quit-claim deed to plaintiff's assignees, Leslie H. Crouch and Harry A. Feeder, of all his right, title and interest in the lots of land in question, which deed was recorded simultaneously with plaintiff's assignment, in book 766 of deeds, at pages 371, &c. Crouch and Feeder thereupon went into possession and subsequently (on March 14th, 1906) sold and assigned the original leases to John B. Sherman, to whom possession was given; said last-mentioned assignment of leases having been duly executed and acknowledged by the said assignors, and their respective wives, and recorded in the county clerk's office, in book 768 of deeds, on pages 335, &c. Said Sherman remained in possession until March, 1918, when he died intestate, leaving as his next of kin and heirs, his widow, Lydia Sherman, and the following children: Elbert S. Sherman, Jennie T. Wolcott, Wilfred Sherman and Nelson Sherman. On October 21st, 1920, the above-named children of John B. Sherman, deceased (their respective wives joining; the daughter, Jennie T. Wolcott, being a widow), assigned, transferred and set over their interests in the premises to the widow, Lydia Sherman, by an assignment in writing (record offered in evidence) duly executed, acknowledged and recorded in the county clerk's office, in book 1131 of deeds, at pages 428, &c. Said Lydia Sherman thereafter (on February 18th, 1922) married John N. Goodnow, and, on October 30th, 1922, they joined in an agreement in writing, undertaking to assign, transfer and set over, on sufficient consideration, the leasehold interests in the premises to the defendant, J. Anna Lewis and Carrie Laymen, which agreement for sale, duly executed and acknowledged, was recorded in the county clerk's office, in book 1204 of deeds, on pages 143, &c.

Said Carrie Laymen subsequently died testate leaving her interest in said premises to the said J. Anna Lewis, whom she appointed executrix of her will. This will was duly admitted to probate by the surrogate on March 26th, 1923, and remains of record in his office, in book 82 of wills, on pages 65, &c. J. Anna Lewis, individually, and as executrix of the will of Carrie Laymen, was, at the institution of this suit, and still is, in possession of the premises involved.

4. The record of several certificates of tax sale of the lots in question which had been assessed to plaintiff's mother made by the township of Neptune, within which taxing district the lands lie, was offered in evidence, together with the record of quit-claim deeds, covering the term of years for which they were sold for such unpaid taxes from the township to Crouch and Feeder, plaintiff's assignees of the leasehold interests in question, in which quit-claim deeds the taxes involved were certified as having been paid by them as consideration therefor.

5. Commencing with the possession of Jessie Day, mother of plaintiff, through the various assignments of the leasehold interests to the defendant, the several holders of such title executed mortgages upon the premises, evidence of which was offered at the trial, but which mortgages were paid by them or their successors in title and canceled of record with the exception of two—one for $6,000, bearing date May 10th, 1913, made by John B. Sherman and Lydia E. Sherman, his wife, and assigned to the Ocean Grove National Bank, which mortgage and assignment thereof were duly recorded, and the mortgage remains a subsisting lien on said leasehold interest in said premises; while the other, a mortgage dated May 11th, 1914, for $900, made by John B. Sherman and Lydia Sherman, his wife, to Elbert S. Sherman, has never been paid and is a lien and encumbrance thereon.

6. The defendant and her predecessors in title to the leasehold interests in question have had an uninterrupted and undisputed possession of the premises from the time of the written assignment by plaintiff in 1906 of the original leases made by the camp meeting association referred to in para-

graph two hereof to the institution of this suit, no demand for possession ever having been made by plaintiff on the holders thereof, all of whom from time to time maintained and improved the buildings erected on the lots in question, paid the ground-rent annually assessed against the same under the terms of the leases, together with the state, county and local taxes, and generally exercised complete control of the premises as owners of the leasehold interests without notice of any actual claim of plaintiff to possession.

7. The usual and customary manner of selling and transferring the possession of lots belonging to the Ocean Grove Camp Meeting Association is in the form of written assignments of original leases made by the association. Plaintiff's predecessors in title (including her mother) acquired their interests by such assignments of leases.

8. Plaintiff bases her claim of right to possession in this action on the ground that the original leases made by the camp meeting association were, in effect, conveyances in fee of the land, because of the long terms with the option to renew, which fee was vested in her by her mother's will, and that the written assignment made by her (plaintiff) to Leslie H. Crouch and Harry A. Feeder, even though on sufficient consideration, was void under section 14 of the Married Women's act (3 *Comp. Stat.*, p. 3237), inasmuch as her husband, George A. DeKyne, did not join her in the execution thereof. No children were born of their marriage and said George A. DeKyne died before the institution of this suit.

The court is urged to hold that the original leases and the mesne assignments to plaintiff's mother covered, in fact, the fee in the *locus in quo* or at least vested in the lessees and assignees an estate equivalent thereto, whereby the assignment made in 1906 by plaintiff was, in effect, a conveyance of her "real estate" and within the purview of section 14 of the Married Women's act (3 *Comp. Stat.*, p. 3237); that it was therefore void because her husband did not join therein, even though it was deliberately executed by her and acknowledged as required by section 39 of the Conveyancing act (2 *Comp. Stat.*, p. 1547), upon a legal consideration and with

intent to divest herself of whatever title she had. It is further insisted that the quit-claim deed executed by the husband and recorded simultaneously with the assignment is of no significance and should be disregarded. Plaintiff thus seeks to recover possession of the premises after a lapse of eighteen years notwithstanding the rights of innocent purchasers and mortgagees in good faith. To permit her to raise to her advantage at this late day what really amounts to a technicality with possible consequences so obviously unfair, to say the least, calls for the closest scrutiny and she should not be allowed to do so unless the legal situation is perfectly clear. This is also so, since it is admitted that no children were born of the marriage of plaintiff and her husband—DeKyne—and that he died before the institution of this suit. No estate by curtesy initiate or consummate could be possibly involved. *Hackensack Trust Co.* v. *Tracy,* 86 *N. J. Eq.* 301; 17 *C. J.* 413.

Is the court permitted to hold, however, that her assignment of the leases in question was a conveyance of her "real estate" within the intent and meaning of the section of the Married Women's act invoked? It is thought not. It is to be remembered that we are concerned with the definite term of ninety-nine years, not with the option to renew for a like term forever, since the time for the exercise of such option has not arrived and it may not be legally presumed that it will be so exercised. The leases in question are neither deeds nor conveyances within the commonly accepted definition and do not convey lands, tenements and hereditaments which comprehend only freehold estates. They are obviously leases for years and confer no estate in the lands demised beyond the recognized leasehold interest. Language appropriate to that end is used and no intent appears on the part of the lessor (camp meeting association) to divest itself of the fee. A term of years, while denominated a chattel real is not, when speaking with legal accuracy, considered "real estate," but on the contrary is considered personal property, whatever might be its duration in years, whether for one or twenty or ninety-nine years. 22 *R. C. L.* 65, § 40. A lease for ninety-

nine years or nine hundred and ninety-nine years is a chattel which the administrator may dispose of in the same manner as he may other personal property of his intestate. A lease for years under seal is not a deed or conveyance of lands, tenements and hereditaments. The latter means what it signified under the old rule of common law, viz., a deed or conveyance of a freehold estate, such estate as must be conveyed by deed and not a lease for years which may be passed by writing not under seal. *Hutchinson* v. *Bramhall*, 42 *N. J. Eq.* (15 *Stew.*) 372, 382, 384, 385. A married woman, for example, can, without the co-operation of her husband, create a term of years in her lands. Neither the word "convey" nor "encumber," according to its ordinary signification, is expressive of the act of creating a tenancy for years in lands. The former is appropriate to the transfer of a title to a freehold, the latter to putting the property in pledge for the payment of money. That the word "conveyance" does not, when standing without assistance in a statute, signify its applicability to the passing of a chattel interest in realty is clearly indicated in the cases. *Sullivan* v. *Barry*, 46 *N. J. L.* 1; 47 *Id.* 339.

Moreover, plaintiff's title could not rise above its source. We cannot be concerned with the option to renew because it had not been exercised and could not have been at the time of the assignment. Her mother did not have a title in fee-simple, from which an estate of inheritance of that character could accrue to the daughter under her will. In the circumstances, it seems clear that the plaintiff could legally sell and dispose of the leasehold interest given and bequeathed to her by her mother in the same manner as a *feme sole,* with the qualification perhaps that the execution and acknowledgment be in compliance with section 39 of the Conveyancing act, as it was. Inasmuch as she did not become seized of or the owner of the fee in the land in question before or during coverture, her husband, DeKyne, had and could have no estate by curtesy initiate therein. *Hackensack Trust Co.* v. *Tracy, supra.* She acquired under her mother's will an interest held to be a chattel real which is personalty, and the

proviso of section 14 of the Married Women's act did not apply.

But if it be assumed that the consent of plaintiff's husband was legally necessary, that is to say, that he should have joined in the execution of the assignment, which in all other respects, including execution and acknowledgment, was in due form under the statute, plaintiff can take nothing of the irregularity. *Pamph. L.* 1926, *ch.* 154, *p.* 258, being in terms retroactive, is applicable and curative in its nature, and even though enacted after the institution of this suit, is regarded as dispositive of the issue. The court feels bound to take cognizance of it and apply it, especially as it became the law before trial of this action and rendition of judgment. 36 *Cyc.* 1221, 1222; *Bonney* v. *Reed, Collector,* 31 *N. J. L.* 133. This statute and a similar one were construed in *Hannan* v. *Wilson,* 5 *N. J. Adv. R.* 273, and *Ely* v. *Pontieri, Ibid.* 317. It is to be remembered that plaintiff's interest in the premises was given and bequeathed to her by her mother. Such interest was a leasehold, became her own property, subject to her separate use as if *feme sole* free from control of her husband, subject, it seems, however, to sale with his assent. *Porch* v. *Fries,* 18 *N. J. Eq.* 204, 208. But it is not perceived why he could not just as effectively have given his assent through the medium of the quit-claim deed formally executed and acknowledged by him two days after the assignment of plaintiff and recorded simultaneously therewith as though he had joined her in such assignment. The purpose of both the wife and husband was to divest themselves of all interest in the premises. He has since died without issue of the marriage. The evidence in the case, therefore, discloses cogent and excellent reasons for holding the Curative act of 1926, *supra,* applicable, especially as it clearly indicates a legislative intent to make it retroactive.

If, moreover, it be again assumed that plaintiff's interest in the premises was in the nature of a fee and the assignment a deed, the evidence justifies the inference of fact that she and her husband were living apart in 1906, and at the time of her execution of the assignment, she appears to have

had the legal right to dispose of her holding without her husband joining therein, since it came to her by gift or bequest of her mother; for by section 8-0 of the Married Women's act (3 *Comp. Stat., p.* 3233) she was empowered to convey without the joinder of her husband, subject, it is said, to his interest, which interest, however, he almost immediately released. *Hollander* v. *Abrams,* 99 *N. J. Eq.* 254, 270. Indeed, a reading of this section would appear to justify the conclusion in fact without assumption that the joinder of the husband was not legally necessary to a valid assignment of plaintiff's leasehold interest in the *locus in quo.*

For the foregoing reasons, the issue submitted must be resolved against the plaintiff. Exceptions will be allowed as ground for appeal. Judgment may be entered in favor of defendant, with costs.