252 N.J. Super. 334 (1991)
599 A.2d 943
RIC-CIC COMPANY, A NEW JERSEY PARTNERSHIP, PLAINTIFF-APPELLANT,
v.
DAVID BASSINDER, CITY OF LONG BRANCH AND LONG BRANCH PLANNING BOARD, DEFENDANTS-RESPONDENTS, AND AGNES C. RICCI AND THOMAS M. RICCI, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1991.
Decided December 11, 1991.
*335 Before Judges KING, DREIER and BROCHIN.
*336 Drew M. Hurley argued the cause for appellant (Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys; William D. Grand, of counsel, Drew M. Hurley, on the brief).
Steven M. Berlin argued the cause for respondent David Bassinder (Giordano, Halleran & Ciesla, attorneys; John A. Giunco, of counsel, Guy P. Ryan, on the brief).
Jack A. Serpico argued the cause for respondent Long Branch Planning Board.
Respondent City of Long Branch did not participate in this appeal.
The opinion of the court was delivered by BROCHIN, J.A.D.
The primary issue in this case is whether a "lessee" under a perpetual "lease" has standing to apply to a municipal planning board for zoning variances and site plan approval for construction of a new building on the leased site. Under the facts of this case, we hold that he does have standing and that the granting of the variances and site plan approval was within the board's discretion. But we remand the case for trial to determine whether provisions of the lease prohibit the lessee's proposed construction or use of the new structure.
Until a fire ravaged the upper portions of the 100-year-old amusement pier in Long Branch, New Jersey, the 178-foot wide wood and concrete pier extended approximately 1000 feet eastward from the boardwalk into the Atlantic Ocean. All of the buildings on the pier were destroyed by the fire, and what remained of the pier was weakened, probably beyond salvaging.
Before the fire, several of the buildings housed amusement-area activities. In a portion of one of those buildings, defendant David Bassinder and two partners operated Scotty's Long Branch Arcade. The arcade, which shared a building with two other tenants, offered coin-operated games, various vending machines and, according to defendant, food services.
*337 Plaintiff Ric-Cic Co., a partnership, owns the fee title and the riparian rights to the land on which the pier was built. Scotty's Long Branch Arcade occupied its premises pursuant to two leases from Ric-Cic Co. to Mr. Bassinder and his two partners. The leases cover adjacent areas and, except for the space described, are substantially identical in their terms. Each grants the "tenant" a term "of Ninety-Nine (99) years, which term shall be renewed in perpetuity." The "rent" which the "tenant" promises to pay under the two leases totals $375,000. Of that sum, $75,000 was a "deposit" paid concurrently with the execution of the leases and the remaining $300,000, secured by a "leasehold mortgage," was to be paid in equal yearly installments over twenty-five years, with eight percent annual interest. The amount of "rent" is described as "a net-net figure to the landlord" and each of the leases provides that "the purchasers shall be responsible for all maintenance and all other attendant taxes and other charges relating to the property."
Except for the perpetual duration of the leases and the terms of payment of the "rent," the provisions are those typically found in conventional leases. These provisions prohibit any "alterations, additions or improvements ... without the written consent of the Landlord." They limit defendant to using its space solely for an "arcade" and for no other purpose. They permit the landlord to terminate the lease without compensation to the tenant upon a governmental taking by eminent domain or upon the occurrence of various defaults.
Defendant Bassinder, who acquired his former partners' interests, claimed that the leases granted him ownership in fee simple of the space where Scotty's Long Branch Arcade had stood, and that he was therefore a "developer" of the property within the meaning of N.J.S.A. 40:55D-4 who had standing as an "applicant" to submit an "application for development" within the meaning of N.J.S.A. 40:55D-3. In that role, he applied to the Long Branch Planning Board for variances and preliminary site plan approval to raze the remnants of the *338 portion of the pier on which the arcade had stood and, on new pilings, to construct a new two-story building, with an arcade on the first floor and a restaurant on the second, in the "footprint" of the space formerly occupied by Scotty's Long Branch Arcade.
Plaintiff Ric-Cic Co. opposed Mr. Bassinder's application. (It hopes to build condominium apartments on its adjacent property.) Ric-Cic Co. argued to the planning board that since Mr. Bassinder was merely a lessee, he had no standing to apply for variances and site plan approval. But the Board disagreed and granted him preliminary site plan approval and variances dispensing with an on-site loading zone and parking facilities, side yard setbacks, and a limitation on maximum building height. The board found that the variances were necessary because the site consisted of a small portion of a pier extending into the ocean, that denying the requested approvals would cause hardship within the meaning of N.J.S.A. 40:55D-70c, and that granting them would have no adverse effects.
Ric-Cic Co. then commenced a Law Division action against Mr. Bassinder, the City of Long Branch, and the Long Branch Planning Board. The action combined a proceeding in lieu of prerogative writs with a suit for an injunction and damages against defendant Bassinder. Ric-Cic Co.'s complaint alleged that Mr. Bassinder lacked standing before the planning board; that the board's grant of the variances was invalid because its findings were unsupported by the evidence; that the board's findings of fact were inadequate; that the leases prohibited use of the premises for any purpose other than for an "arcade"; that the site plan encompassed an area larger than that included in the leases; that N.J.S.A. 46:8-7 had terminated the leases as the result of the destruction of the leased premises; and that Mr. Bassinder did not control the loading area upon which the site plan approval was premised. The complaint also asserted that construction of the proposed restaurant would constitute an anticipatory breach of the leases and that the actions which *339 Mr. Bassinder had already taken were a present material breach.
Both plaintiff Ric-Cic Co. and defendant Bassinder moved for summary judgment. After discovery and a hearing, the Law Division judge granted defendant's motion for summary judgment, denied plaintiff's, and dismissed all of the counts of the complaint. He ruled that Mr. Bassinder had standing to apply for the variances and site plan approval, his proofs were sufficient and his applications were properly granted; that the leases did not preclude his proposed use of the property because the term "arcade" connotes eating facilities, and food service operations were conducted there before the fire; and that the fire did not terminate the leases. After the court's decision, the City of Long Branch and the Long Branch Planning Board moved for summary judgment, their motions were also granted, and the complaint was dismissed against them as well.
On appeal, plaintiff Ric-Cic Co. argues that the trial court's grant of summary judgment was erroneous because each of its rulings either misconstrued the law or disregarded a genuine dispute as to a material fact.
On the issue of standing, the trial judge stated:
The Municipal Land Use Law, N.J.S.A. 40:55D-25, grants power to a municipal planning board to hear and determine site plan applications as well as certain types of variance applications. N.J.S.A. 40:55D-3 defines the term "applicant" as a "developer submitting an application for development" and under N.J.S.A. 40:55D-46, 48 and 50 a "developer" is identified as the individual or entity who makes application for preliminary site plan approval. It must be noted that under N.J.S.A. 40:55D-4 a "developer" "means the legal or beneficial owner or owners of a lot or of any land proposed to be included in a proposed development including the holder of an option or contract to purchase, or other person having an enforceable proprietary interest in such land."
The court held that in the light of these statutory provisions, Bassinder was a person having "an enforceable proprietary interest" and that he therefore had standing to submit his applications for site plan approval and variances.
*340 Ric-Cic Co. argues that this ruling was based at least in part on the trial judge's erroneous understanding that in a prior suit between the parties another judge had already ruled that because Mr. Bassinder was the lessee under a 99-year lease, he was a beneficial owner of the property who had "`an enforceable and proprietary interest.'" Mr. Bassinder responds that the trial judge was correct in his premise that a prior ruling of another judge established his proprietary interest in the pier; in fact, defendant Bassinder contends that still another ruling in still another proceeding between the parties reached the same result.
We cannot be certain from the record submitted to us whether final judgments were entered in either one or both prior suits holding that Mr. Bassinder's leases from Ric-Cic Co. gave him a proprietary interest in land. In our view, however, whether or not the trial judge in the present suit was influenced by the impression that that issue had already been decided in Mr. Bassinder's favor and whether or not such an impression would be correct is immaterial. Mr. Bassinder's standing is a question of law governed primarily by the applicable provisions of the Municipal Land Use Law, and we are empowered to decide it for ourselves.
Ric-Cic Co. emphasizes that N.J.S.A. 40:55D-4 defines a developer as someone with an interest in land, and argues that the only interest transferred to Mr. Bassinder by the leases at issue in the present case "was a leasehold interest for a term of years, albeit a long-term interest, in certain floor space in one building on the Pier" and that "nothing in the leases can be construed as giving Bassinder an actual interest in land." It cites Brown v. Havens, 17 N.J. Super. 235, 85 A.2d 812 (Ch.Div. 1952) (a 99-year lease is an interest in personalty and therefore cannot be held as a tenancy by entireties); Ocean Grove Ass'n v. Sanders, 67 N.J.L. 1, 50 A. 449 (Sup.Ct. 1901) aff'd, 68 N.J.L. 631, 54 A. 448 (E. & A. 1903) (enforcing the rent provisions of a perpetual lease); and DeKyne v. Lewis, 5 N.J. Misc. 948, 139 A. *341 434 (Cir.Ct. 1927) (a 99-year, renewable lease can be transferred by a married woman without her husband's signature because it is not realty for purposes of the Married Women's Act). Mr. Bassinder, on the other hand, cites Lake End Corp. v. Rockaway, Tp., 185 N.J. Super. 248, 256, 448 A.2d 475 (App.Div. 1982) (a long term leasehold is equivalent to a fee simple for purposes of taxation), and Ocean Grove Camp Meeting v. Reeves, 79 N.J.L 334, 75 A. 782 (Sup.Ct.) aff'd., 80 N.J.L. 464, 79 A. 1119 (E. & A. 1910) (same), as demonstrating the contrary proposition. However, none of these cases are dispositive of the question at issue here. They show only that an unconventional legal interest may be classified in one category or another, depending on the purpose of the categorization.
We reject Ric-Cic Co.'s argument that Mr. Bassinder does not have an "an interest in ... land" within the meaning of N.J.S.A. 40:55D-4 because the leased premises consist only of floor area on a pier over water. The argument is frivolous. In legal usage, "land" denotes much more than terra firma. For example, the entry for "land" in Black's Law Dictionary 789 (5th ed. 1979) includes the following:
Technically land signifies everything which may be holden; and the term is defined as comprehending all things of a permanent and substantial nature, and even of an unsubstantial, provided they be permanent. [Citation omitted.]
....
The term "land" may be used interchangeably with "property"; it may include anything that may be classed as real estate or real property. [Citation omitted.]
See also N.J.S.A. 40:55D-4 ("Land includes improvements and fixtures on, above or below the surface.")
Both parties have referred to the leases as 99-year leases renewable in perpetuity. In fact, the interests which they purport to convey are greater even than a leasehold interest renewable in perpetuity. To refer to the term of the lease as "renewable" implies that something, however perfunctory, must be done at the end of the term to accomplish the renewal. In the present case, each of the leases confers "a term of *342 Ninety-Nine (99) years which term shall be renewed in perpetuity." That language[1] does not purport to reserve any remainder interest to Ric-Cic Co. (although the various default clauses of the leases, if enforceable, may leave the grantor with the right to re-enter the premises and evict the tenant). Whatever the nature and intended duration of Mr. Bassinder's interest, we hold that the language of perpetual grant and the lump sum compensation receivable in exchange imply that he received something which clearly qualifies as an "interest in ... land" within the meaning of N.J.S.A. 40:55D-4. Mr. Bassinder is therefore a "developer" entitled to submit applications for variances and site plan approval pursuant to N.J.S.A. 40:55D-3, -46, -48 and -50. Cf. Trinity Baptist Church of Hackensack v. Louis Scott Holding Co., 219 N.J. Super. 490, 501, 530 A.2d 828 (App.Div. 1987) (Contract purchasers have a sufficient interest to apply for variances.); see Pequinot v. Allen County Bd. of Zoning Appeals, 446 N.E.2d 1021, 1024 (Ind. App. 1983) (Lessee has sufficient standing to present a variance application); Emmi v. Zoning Bd. of Appeals of Salina, 63 N.Y.2d 853, 472 N.E.2d 39, 482 N.Y.S.2d 263 (1984) (Tenant who has paid real property taxes and has previously applied to the Board has standing to apply for variances.)
Because of the nature of the grant from Ric-Cic Co., destruction of the pier by fire did not terminate Mr. Bassinder's interest despite N.J.S.A. 46:8-7. That statute, upon which plaintiff relies for one of its grounds of appeal, states:
Whenever any building or buildings erected on the leased premises shall be totally destroyed by fire or otherwise, without the fault of the lessee, the rent shall be paid up to the time of such destruction, and then, and from thenceforth, the lease shall cease and come to an end. This section shall not extend or *343 apply to cases wherein the parties have otherwise stipulated in their agreement or lease. N.J.S.A. 46:8-7. [Emphasis added.]
N.J.S.A. 46:8-7 was adopted to benefit tenants "as a remedy for the harshness of the common law rule, which made the rent payable notwithstanding the destruction of the buildings upon the demised property." Carley v. Liberty Hat Mfg. Co., 81 N.J.L. 502, 504, 79 A. 447 (E. & A. 1910). It was "[t]he hardship of these rules upon tenants [that] led to the adoption in most states of statutes such as our N.J.S.A. 46:8-6 and 7...." Pivnick v. Seaboard Supply Co., 30 N.J. Super. 605, 611, 105 A.2d 695 (Cty.Ct. 1954). Since the statute was "adopted for the benefit of the tenants, [it is] properly construed liberally in favor of tenants." Id. at 611, 105 A.2d 695.
One of the primary objectives of N.J.S.A. 46:8-7 is to relieve the tenant from the obligation to continue paying rent despite the destruction of the premises. The provision of the statute that the "rent shall be paid up to the time of ... destruction" is unworkable here because the "tenant" has obligated itself to pay $375,000 over 25 years for a perpetual interest in the premises. (In fact Ric Cic demanded and accepted payments of rent after the fire, thus affirming continuation of the lease.) By their agreement for perpetual enjoyment of the premises in consideration for a total amount of $375,000, the parties to these leases have "stipulated otherwise" within the meaning of N.J.S.A. 46:8-7.
We also agree that the record is sufficient to sustain the Planning Board's grant of variances for setback and on-site parking requirements and that its resolution was adequate. The justification for the variances was obvious. The pier is a unique structure. It has neither space for setbacks nor neighbors who would benefit by them. Space for on-site parking is simply not available and has never been available on the pier. This was clearly a case where relief was warranted under the terms of N.J.S.A. 40:55D-70c(1) which gives the board of adjustment and, in appropriate cases, the planning board under N.J.S.A. 40:55D-60, the power to:

*344 (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property ... the strict application of any regulation pursuant to [N.J.S.A. 40:55D-62] would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship....
See Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. 551, 562, 542 A.2d 457 (1988); Terner v. Spyco, Inc., 226 N.J. Super. 532, 547-548, 545 A.2d 192 (App.Div. 1988).
In the trial judge's opinion dismissing Ric-Cic Co.'s complaint on summary judgment, he states:
It appears ... from the file that an agreement had been arrived at between the governing body of the City of Long Branch and Bassinder whereby the city would take the necessary steps to designate a loading zone on Ocean Avenue as an alternative to an on-site loading zone in order to avoid motor traffic over the pedestrian way on the boardwalk. Therefore the Planning Board determined that a variance in this regard should be granted.
We agree with Ric-Cic Co. that the record does not establish beyond genuine dispute that there was a binding agreement between Mr. Bassinder and the City to designate a loading zone on Ocean Avenue. If such an agreement were a necessary predicate for affirmance, we would reverse on this issue. However, the Planning Board's resolution made its grant of the variances subject to the condition that "the Applicant will construct the loading zone in accordance with the recommendations of the Planning Department [of the City of Long Branch], dated March 15, 1989 and the City Traffic Department, dated June 19, 1989." Since the variance is subject to Mr. Bassinder's constructing the necessary loading zone, whether or not he has obtained an agreement for its construction is immaterial to the validity of the variance.
However, these rulings in favor of Mr. Bassinder do not dispose of the case. We have held that the language of his leases from Ric-Cic Co. appear to give him a perpetual grant to the described space. Nonetheless, the leases imposed restrictions on the use of that space. The validity of those restrictions and their effect on the implementation of his site plan *345 proposal was a matter which the planning board did not have to decide. Cf. Springsteel v. Town of West Orange, 149 N.J. Super. 107, 111-112, 373 A.2d 415 (App.Div.), certif. denied, 75 N.J. 10, 379 A.2d 241 (1977) (Municipal bodies are not capable of adjudicating legal or equitable issues.) But Ric-Cic Co. also asserted injunction and damage claims against Mr. Bassinder on the ground that the leases limited him to using the premises for an arcade and that that use did not include a restaurant. In our view, the motion judge erred in deciding that issue as a matter of law. There was a genuine dispute of fact about the extent of the prior use of the premises for food services and about what "arcade" means as that term is used in the leases. Resolution of those issues requires a trial. R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954); Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 211-12, 521 A.2d 872 (App.Div. 1987). This factual dispute must be resolved on remand.
Ric-Cic Co. also argues that Mr. Bassinder should be enjoined from proceeding with his project because there is a genuine dispute of fact material to the area and location of the leased premises. Mr. Bassinder responds, and the Law Division judge agreed, that that dispute is immaterial because he is willing to conform his new construction to whatever his leased premises may be. We agree that this concession on Mr. Bassinder's part refutes the contention that the dispute which Ric-Cic Co. expressly raised about the exact size or location of the premises should have precluded summary judgment.
However, Ric-Cic Co.'s contention that there is a triable issue of fact material to the exact size and location of Mr. Bassinder's premises implicitly projects much broader issues about the nature and extent of Mr. Bassinder's rights. Beyond holding that he has standing to apply for site plan approval and variances, we have not attempted to define his rights to utilize the premises described in the leases. Those issues were not decided by the Law Division or argued before us. But the ambiguities and internal inconsistencies of the leases leave *346 numerous questions to be resolved before either of the parties claiming an interest in the pier will be able to proceed with construction. For example, what, if any, vertical limits are there on the space which Mr. Bassinder is entitled to utilize? What, if any, significance do the provisions of the leases have which purport to prohibit him from making any "alterations, additions, or improvements" in the premises without the permission of Ric-Cic Co? Like units in a condominium or structures sharing a party wall, the areas controlled by Bassinder and by Ric-Cic Co. may be structurally interdependent. What are the legal consequences of that relationship? The answers to these and other questions will affect Mr. Bassinder's ability to construct a two-story building in the area formerly occupied by Scotty's Long Branch Arcade. The single-controversy doctrine dictates that all issues affecting the parties' conflicting claims to the pier area should be resolved in this litigation. See Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989); Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 476 A.2d 250 (1984). All such disputed issues should be dealt with on remand.
Any other arguments on appeal which have not been expressly disposed of are clearly without merit. R. 2:11-3(e)(1)(E).
The judgment appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] Perhaps leases were used to circumvent subdivision requirements. See N.J.S.A. 40:55D-5. We have not considered whether the events which are the subject of this law suit constitute the severance of one part of a parcel from another requiring current subdivision approval despite the lapse of more than ten years since the execution of the leases.