EMILY F. CARLEY, DEFENDANT IN ERROR, v. LIBERTY HAT MANUFACTURING COMPANY, PLAINTIFF IN ERROR.

Argued November 18, 1910—Decided March 6, 1911.

The supplement of 1874 to the Landlord and Tenant act (*Pamph. L.* 1874, *p.* 27; *Gen. Stat., p.* 1923), in case of the total destruction of the building or buildings erected on leased premises by fire or otherwise, without the fault of the lessee, permits a recovery by the tenant, from the lessor, of such portion of an installment of rent that has been paid in advance, as would have been earned after such destruction.

On error to the Supreme Court, whose opinion is reported in 50 *Vroom* 316.

For the plaintiff in error, *Lowy, Lowenstein & Leber.*

For the defendant in error, *Sommer, Colby & Whiting.*

The opinion of the court was delivered by

VOORHEES, J.  This is a writ of error to the Supreme Court which, on appeal, affirmed a judgment of the Second District Court of Newark, rendered for the plaintiff for $150 and costs.

The suit was brought for $150, being an installment of rent due upon a written lease, demising certain lands and premises, with the buildings thereon and appurtenances, at a yearly rental of $1,800, payable in monthly installments of $150, each in advance on the first secular day of each month.  An installment of rent became due, for the month of May, 1909, on the first day of that month.  It was not paid on the due date.  The defendant remained in the undisturbed possession of the premises until May 8th, 1909, when, without his fault, the buildings on the premises were totally destroyed by fire.  Since the fire, the defendant has not occupied the premises.

Some time after the fire, but before suit brought, the defendant made a tender to the plaintiff of eight days' rent which was refused.  The suit was then instituted to recover the rent for the entire month of May.  The defendant interposed a recoupment against the plaintiff's demand for the portion of rent from the 8th day of May to the 1st day of June.  Judgment was given for $150 for the plaintiff for the whole month, the defendant's claim for the portion of the rent referable to the period after the fire being disallowed.

The solution of the question presented by the writ involves the construction of the act of March 5th, 1874.  *Pamph. L., p.* 27; *Gen. Stat., p.* 1923.  It reads as follows:

"That whenever any building or buildings erected on leased premises shall be injured by fire without the fault of the lessee, the landlord shall repair the same as speedily as possible,

or in default thereof, the rent shall cease until such time as such building or buildings shall be put in complete repair; and in case of the total destruction of such building or build-.ings by fire or otherwise, the rent shall be paid up to the time of such destruction, and then and from thenceforth the lease shall cease and come to an end; provided always, that this section shall not extend to or apply to cases where the parties have otherwise stipulated in their agreement of lease."

Of course, this statute was a remedy for the harshness of the common law rule, which made the rent payable notwithstanding the destruction of the buildings upon the demised property.

It provides for two cases: the first for injury to the buildings by fire, and makes it the duty of the landlord to repair under penalty of having the rent cease until the buildings shall be put in complete repair. This does not contemplate the termination of the lease. The other case is where there is a total destruction of the buildings. In that case, the rent shall be paid up to the time of the destruction and then the lease shall cease and come to an end.

Reading these two clauses together, it cannot be said that the statute offers an option to the tenant, to be availed of by him within a reasonable time, whether he will terminate the lease or not. The language expressly provides that the lease shall terminate and the word *"then"* in the clause *"and then and from thenceforth"* refers to the time of destruction.

The severing of the relation between landlord and tenant may prove to be of substantial benefit to the owner, by leav- · ing him free to allow the premises to remain without buildings or to erect thereon new structures suited to the location and condition of the property. The termination is not made dependent upon the rent being paid to the time of the destruction. The statute means that there shall be a liability for the payment of the rent to the date of destruction and cessation of the term, and provides that the tenant shall pay it. This is most equitable and a just change of the former rule, and being within the plain words of the act, should be the construction.

It has been suggested that this view would, in some cases, lead to injustice, and the case has been instanced where a plantation had been demised, having but a single structure upon it, the destruction of which would work a termination of the lease.

The answer to that is that the parties contract with knowledge of the law, and may provide against such a contingency by agreeing upon the circumstances which shall terminate the lease.

Great stress has been laid upon the fact that at common law rent is not apportionable, and therefore cannot be divided. It is strenuously argued that when by agreement rent has been made payable in advance of the period for which it is to be earned, it is still a unit and indivisible, and *a fortiori* when paid, is not recoverable, although the term of the tenant may have come to an end before the end of the period for which it was paid.

The statute, in the plainest words, as to rent, not made payable in advance, has changed the common law rule, in the cases mentioned in the statute. Rent thus payable under the given circumstances has been clearly made apportionable.

The language "paid up to the time of such destruction" means payment of the rent which is earned up to that time, and it is clear that rent not payable in advance of being earned, but at the end of the period for which it was reserved, could be recovered only for a period "up to the time of such destruction." The plaintiff concedes the soundness of this proposition.

Should a different effect be given to the statute when the fire occurs after an installment of the annual rent has become due and payable, but within the period for which it was reserved?

We agree that the plaintiff is correct in insisting that the failure of the tenant to pay the rent promptly upon the first day of the month in advance can gain for it no advantage, from the circumstance that in fact the rent was unpaid when the fire took place. To hold otherwise would be permitting the lessee to profit by its own wrong. The case must be con-

sidered with reference to the right of the tenant to recover from the landlord, in case the rent had been paid in advance, the unearned portion thereof, that is all that had not been earned at the time of the fire and after eviction under the statute.

In debating this question we must keep in mind what the statute avowedly intended to do and what it has in terms directed shall be done. First, it has provided that the fire shall mark a period down to which the tenant shall be liable to pay and cancel his liability thereafter. Secondly, that after the fire, "the lease shall cease and come to an end," it thus not only puts an end to the enjoyment of the occupation, but, in consequence, causes a failure of the consideration for which the rent had been paid in advance. Thus every obstacle to the recovery by the tenant of previously paid rent is removed. The rent is divisible and the consideration has failed.

This result seems to attend the natural and ordinary meaning of the words of the enactment. It enforces payment on the part of the tenant for the value he has received in the enjoyment of his possession. It prevents the landlord from retaining that for which he has given no value.

The argument is that liberality of construction should not be accorded to the statute because it is in derogation of the common law. All statutes which change the common law are in a sense in derogation thereof, yet there is another rule which is likewise recognized prescribing for remedial statutes a liberal interpretation. The case of *Coles* v. *Celluloid Manufacturing Co.,* 10 *Vroom* 326, cited as sustaining this principle, does not seem to be in point.

While it referred to this statute, it was to show its inapplicability to the case then under consideration, because enacted after the cause of action in that case had arisen. *Tinsman* v. *Belvidere Delaware Railway Co.,* 2 *Dutcher* 148, also cited, is clearly distinguishable for the contention sought, for the enactment was quite without its terms and its reason and spirit as well. *State* v. *Lash,* 1 *Harr.* 380, was a penal statute, and so clearly within the imperative rule requiring strict construction.

The fundamental canon of construction is that the intention of the legislature shall prevail, and that it shall be gotten from the plain meaning of the enactment. That meaning, however, once ascertained, a remedial enactment will extend so as to advance the remedy provided by it, and suppress the mischief which preceded its passage.

No one can doubt that in the plainest terms this act includes the objects above set forth. Nor can it be denied that the mischief, which lurked within the old law, and was designed to be suppressed, was the great injustice that ofttimes happened to tenants by being obliged to pay rent after the possibility of the beneficial enjoyment of the premises had ceased. The statute is therefore highly remedial, and its scope should be held to include a complete remedy for the recognized wrong it was intended to right. That object is plainly within its words.

We think, therefore, that the statute, in case of the total destruction of the building or buildings erected on leased premises, by fire or otherwise, without the fault of the lessee, permits a recovery by the tenant, from the lessor, of such portion of an installment of rent that has been paid in advance as would have been earned after such destruction.

We have no direct authority in this state construing this statute. Turning to the cases in other states referred to by the plaintiff, we first notice *Craig v. Buttler,* 31 *N. Y. Sup.* 936; *affirmed,* 156 *N. Y.* 672. The wording of the New York statute is, "Shall not be liable to pay rent * * * after such destruction." The court says: "Of course, the purpose of the statute is to relieve the tenant from the payment of rent which accrued after the destruction, not from the payment of rent which was due but unpaid at that time. So that the question is narrowed whether the rent sought to be recovered had accrued when the fire occurred," and concluded that the rent had accrued before the fire.

The New York statute is not as strong as ours. It is confined to the payment of rent after the destruction. Our statute says that the rent shall be paid up to the destruction —clearly contemplating an apportionment. The New York

court, in speaking of the rent having accrued, evidently uses that word in the sense of become due and payable, and thereby brings the case within the literal language of their statute.

We think the true meaning of the word *"accrue"* is "to grow," and in that sense, the rent accrues from day to day. It is on that principle that interest is apportionable as it accrues on a note or other interest-bearing obligation. *Manning* v. *Randolph,* 1 *South.* 144; *In re Lack. Iron, &c., Co.,* 10 *Stew. Eq.* 26. In the latter case, it is said "interest due on a bond and mortgage was always apportionable on the ground that it accrued from day to day."

The New York statute differs from ours in the fact that the former makes it optional with the tenant whether he will end the term.

In *Johnson* v. *Oppenheim,* 55 *N. Y.* 280 (at *p.* 285), the New York statute is declared to be remedial and to permit the tenant to quit and surrender. "It gives to the tenant the option, when the demised premises are no longer capable of beneficial enjoyment, to terminate and annul the lease." It requires the surrender of the possession as a release to the tenant from the payment of rent, if he elects to avail himself of its provisions.

Our statute, as above pointed out, destroys the estate of the tenant, and thereby takes away from him all enjoyment of the premises; a pointed distinction which must be made in comparing the two enactments regarding the right of recovery of a *pro rata* of rent previously paid.

The logical dissenting opinion of Chief Justice Parker, in *Craig* v. *Buttler, supra,* is referred to as showing that even the less rigorous New York statute may well be construed to allow such recovery.

The next case is *Werner* v. *Padula,* 63 *N. Y. Sup.* 68; *affirmed,* 167 *N. Y.* 611. That case arose upon the wording of a lease, and not upon the statute, which wording follows almost literally and quite substantially the language of our own act. The New York court held that the terms of the lease and their statute amount to precisely the same thing

and had exactly the same meaning, and therefore held that the case was governed by Craig *v.* Buttler. The variation above pointed out between the two statutes received no attention or comment.

The case of *Felix* v. *Griffiths,* 56 *Ohio St.* 39, arose likewise upon the construction of a lease. It was agreed that in case the building from any cause should grow unfit for occupancy, the parties should not be liable to pay rent *after the tenant should have surrendered possession of the premises.* The court said that by this agreement, the tenant exempted himself from payment of rent after surrender. Without comment upon the conclusion of the court, as being a correct disposition of the case, it has no great bearing upon our statute. As the court said, the parties "in distinct language limited that exemption to exoneration of the lessee after the surrender." The surrender was voluntary and the selection of the time when it should be made.

A Wisconsin case, *Cross* v. *Button,* 4 *Wis.* 487, was also a covenant in a lease, providing for a deduction to be made for rent for the time the tenant should be deprived of the use of the building destroyed. The court held that the deduction should be made, but from the unpaid rent falling due from the next quarter and not from the rent already paid, and therefore would not construe it into a covenant to refund the rent already due and paid.

It will be observed that it did not provide for a termination of the lease by fire, and therefore the question of refunding, as here presented, was not necessarily involved. But the apportionment of the rent was indirectly conceded. The case of *Copeland* v. *Goldsmith,* 100 *Wis.* 436, does not differ from Cross *v.* Button, and was decided on the authority of that case.

*Lieberthal* v. *Montgomery,* 121 *Mich.* 369, was also on a covenant in a lease. It was there held that payment in advance was voluntary under the covenant, and that the earlier cases above referred to were conclusive upon the court. These cases thus cited by the plaintiff fail to overcome the theory which we advance, for our statute necessarily implies

an apportionment as well as an enforced cessation of the lease.

The mere fact that the parties in the lease agreed that the rent should be payable in advance will not be construed to mean, that, under the proviso reading, "provided always, that this section shall not extend or apply to cases where the parties have otherwise stipulated in their agreement of lease," they have assented that the statute shall not apply.

There is no reference in the lease to the statute or to its subject-matter. Concededly, advance payments merely modify the operation of the act. It is not claimed that such payments would avert its action in terminating the lease. They have not stipulated that the "section shall not extend to or apply" to the lease.

Of the cases cited by the defendant, it is admitted that *Porter* v. *Tull* (6 *Wash.* 408), 22 *L. R. A.* 613, is in point. *Rich* v. *Smith,* 121 *Mass.* 328, has to this extent a bearing in the defendant's favor, that in the absence of a direct covenant to repay, a repayment may be enforced upon a construction of a clause of a lease providing for the "suspension and abatement" of a just and proportionate part of the rent.

*Taylor* v. *Hart* (*Miss.*), 30 *L. R. A.* 716; *Coogan* v. *Parker,* 2 *S. C.* 255; 16 *Am. Rep.* 659; *Lanpher* v. *Glenn,* 37 *Minn.* 4, and *Whitaker* v. *Hawley,* 25 *Kan.* 674, seem not to be specially instructive upon the questions involved.

To the plaintiff's contention that she is supported by cases involving surrender, eviction, dispossession and condemnation, and those between heir and personal representative, and life tenant and remainderman, a complete answer lies in the fact that the common law doctrine that rent will not be apportioned in these cases has not been changed by statute. In the present case, as before remarked, the statute, by fair construction, makes rent apportionable, not generally, but only when the occasion therefor arises by reason of the destruction of the buildings.

The judgment of the Supreme Court will be reversed to the end that a new trial may be granted.

*For affirmance*—The Chief Justice, Reed, Bergen, Minturn, JJ. 4.

*For reversal*—The Chancellor, Garrison, Voorhees, Bogert, Vredenburgh, Vroom, Congdon, JJ. 7.