## Mary Szulerecki, Defendant in Error, v. Julius Oppenheimer, Plaintiff in Error.

## Gen. No. 22,094.

1. LANDLORD AND TENANT, § 155*—*how character of estate is determined.* What estate passes by a lease depends upon the intention of the parties to be collected from the whole lease, from their situation, and from the subject-matter of the contract.

2. LANDLORD AND TENANT, § 446*—*when lease is terminated by destruction of building.* In the absence of any special provision on the subject in a lease of a portion of a building as to continued tenure of the tenancy after total destruction of the building, no interest in the land would pass under the lease and such destruction would terminate it.

3. LANDLORD AND TENANT, § 446*—*when lease conveys interest in land continuing after destruction of building.* Where a lease of a portion of a building provided that the lessor should within a certain time after any loss, damage or destruction of the building or leased portion thereof which rendered same untenantable restore the same, and if he did not the lessee might at his option terminate the lease, *held,* that such lease conveyed an interest in the land and continued in force after any such loss, damage or destruction until the lessee exercised his option and terminated it.

4. LANDLORD AND TENANT, § 446*—*what constitutes total destruction of building.* There is a total destruction of a building by fire authorizing the termination of a lease of a portion of the building by the lessee under the provisions of the lease where only parts of the walls are left, which subsequently have to be razed, as the property lost thereby its character as a building.

Error to the Municipal Court of Chicago; the Hon. EDMUND K. JARECKI, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Reversed. Opinion filed March 20, 1917.

ROSENTHAL & HAMILL, for plaintiff in error; LESSING ROSENTHAL and HARRY MARKHEIM, of counsel.

AUSTIN J. ROONEY, for defendant in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Presiding Justice Barnes delivered the opinion of the court.

This writ of error presents for review a judgment in a forcible detainer suit for possession of premises described as "4708 South Ashland avenue, Chicago." The defendant (plaintiff in error) conducted a department store in the buildings on three adjoining lots on said avenue. The middle lot is twenty-five feet wide and about one hundred and twenty feet deep from street to alley. Defendant occupied the same under a lease from plaintiff (defendant in error) for the term from May 1, 1908 to April 30, 1918. The other two lots and the buildings thereon were owned by defendant. The front part of the building on the leased lot was of brick and mill construction, three stories high, and covered the fifty feet from the front line. The rear of the building was of frame construction one story high and extended beyond the brick portion about sixty feet to within about ten feet of the alley. There was a basement under the brick construction, but none under the frame. December 24, 1914, the buildings on these lots were destroyed by fire. It left only parts of the brick walls of the leased building, which afterwards had to be razed, but most of the foundations and basement remained intact. Defendant occupied the entire first floor of the three-story part and the basement thereunder and the entire frame portion. Another tenant occupied the second story, but the terms of his lease are not disclosed. The record indicates that he leased only the rooms.

Relying on provisions in the lease hereinafter set forth, defendant served plaintiff with a written notice on April 24, 1915, setting forth the same and stating that unless plaintiff restored the building defendant might elect to restore the same at plaintiff's expense. Plaintiff refused to make the restoration and demanded that defendant vacate the premises. Defendant

then began erection of new buildings on his lots and in September, 1915, proceeded to erect over the entire leased lot between the walls of his two buildings a one-story building of brick and terra cotta exterior, of slow burning, mill construction, capable of supporting two additional stories and of being used for the same purposes as the building replaced if the other stories were added. The same foundations were used except where they had been condemned by the city. The roof rested on iron posts and girders, and new walls were erected in front and rear but not on the sides. No rent was paid after the fire. On October 13, 1915, about two weeks after the restored building was under roof, plaintiff began the forcible detainer suit.

The premises demised were described in the lease as "the entire first floor and basement of the three-story brick building known as No. 4708 South Ashland avenue." The executed instrument was on a printed form that contained the following clause:

"In case said premises shall be rendered untenantable by fire or other casualty, the lessor may, at his option, terminate this lease, or repair said premises within thirty days, and failing so to do, or upon the destruction of said premises by fire, the term hereby created shall cease and determine."

This clause was ruled out with red ink and there was substituted in its place in handwriting the following paragraph, the proper construction of which is the main question before us, namely:

"In the event that said demised building, or any part thereof, shall be rendered untenantable by fire or other casualty, or be damaged, condemned or taken by the public authorities, the lessor shall, and agrees to, restore the same within ninety days after any such loss, damages or destruction, and the lessee shall not be obligated to pay any rent for the part of the demised premises rendered untenantable while the same are not tenantable. In the event of the lessor's failure to

restore the same, as aforesaid, the lessee may at his option but without prejudice to his other remedies terminate this lease.''

Defendant among other things covenanted to keep the premises in good repair and to keep them ''and appurtenances, including catch basins, vaults and adjoining alleys, in a clean and healthy condition,'' and to remove the snow and ice from the roof when necessary, and clean the snow and ice from the sidewalks in front of said premises.

The decisive question presented upon the foregoing facts is whether the lease to plaintiff in error conveyed an interest in the land. The court was requested, but refused, to hold in effect that the lease was not terminated *ipso facto* by such destruction of the building. What estate passed by the lease depended of course upon the intention of the parties to be collected from the whole lease, from their situation, and from the subject-matter of the contract. (2 Bac. Abr. Lease, K.; *Winton v. Cornish,* 5 Ohio 477; *Shawmut Nat. Bank v. Boston,* 118 Mass. 125; *Crocker v. Hill,* 61 N. H. 345.) We would find little difficulty in gathering its intention but for the provision in the lease preserving to the lessee 'the option to terminate it on failure of the lessor to restore the building in the event of its destruction. Without such provision the facts would seem to bring the case within the principle that a lease only for portions of a building will be terminated on its total destruction. In such a case the theory is that no interest in the land passes and therefore there is nothing after the destruction of the building upon which the lease can operate. The principle is stated on varying facts in *Winton v. Cornish, supra; Shawmut Nat. Bank v. Boston, supra; Humiston, Keeling & Co. v. Wheeler,* 175 Ill. 514; *Smith v. McLean,* 123 Ill. 210; *Stockwell v. Hunter,* 11 Metc. (Mass.) 448.

The specific description of the premises demised in

the lease at bar as "the entire first floor and basement of the three-story brick building known as No. 4708 South Ashland avenue" would, in the absence of a provision indicating a different intention, seem to import a demise of merely a portion of the building. And we do not think that the covenant of the lessee to keep the "appurtenances, including catch basins, vaults and adjoining alleys, in a clean and healthy condition" and to remove the snow and ice from the roofs and the sidewalks in front of the premises, or the personal covenant of the lessor to restore the demised building in case of its destruction, would alone or together, without the aid of other provisions, import a different intention.

But we are unable to reconcile the clause expressly giving to the lessee the option to terminate the lease in the event of the lessor's failure to restore the building, with an *ipso facto* termination of the lease on the destruction of the building or the failure of the lessor to perform his covenant. Without a demise of any interest in the land the lease would unquestionably terminate on the destruction of the building, or the refusal or failure of the lessor to restore it, and the lessee would be relegated to his remedy for a breach of the lessor's covenant to restore the building, as was held in the *Shawmut* case, *supra*.

But was it intended that the lease should be so terminated? If so, the clause in question is wholly inoperative and meaningless. If, on the contrary, the option gave the lessee the right to continue the lease, then of necessity there was demised an interest in the land, as otherwise there would be nothing left upon which the lease could operate. Following the general rule of construction we must, if possible, give effect to every sentence. "To this end, in the construction given, one part must be so construed with reference to the other portions that every part must stand, and, if

it can be prevented, no part of it, either in words or sentences, shall be regarded as superfluous or void." (*John Morris Co. v. Southworth,* 154 Ill. 118.) What meaning, then, shall be given to the provision in question? It gives lessee an option to terminate the lease. That implies a right of choice, and the only alternative is the continuance of the lease. Or, to state it another way: A lease is implied for the full term, notwithstanding the building shall be rendered untenantable, unless the lessee elects to terminate it on the failure of the lessor to restore the building. If, on the other hand, the lease is terminated *ipso facto,* then the lessee has nothing with respect to which he can exercise an option. As the option was expressly given and the exercise of it is not incongruous with any other part of the lease, the provision in question is capable of only one construction, namely, that if the lessee did not exercise his right to terminate the lease, then it continued in force. If the words in the provision were at all ambiguous, we might resort in aid of such construction to the fact that this provision was substituted for a printed provision that gave the lessor instead of the lessee the option to terminate the lease under similar circumstances, and expressly provided that it should terminate on the lessor's failure to repair or upon the destruction of the premises. The substituted clause imports a very different intention, and we fail to see how it can be given effect otherwise than by holding that the lease continued in force on the failure of the landlord to restore the building unless the lessee exercised his option to declare it terminated. Had the lessor performed his covenant by restoring the premises, can it be doubted the lessee would have been obligated to pay rent for the full term of the lease except while the building was untenantable? And, if he failed to restore the building and the lessee did not elect to terminate the lease, can it be doubted

that the latter had a right to make use of the premises for the purpose designated in the lease, namely, "for mercantile purposes"?

It appears that the lessee has undertaken to restore the premises, so far as he might enjoy the use thereof, as contemplated by the lease, leaving the building capable of being restored to its former uses, if the landlord chooses to effect further restoration. But as we view it, no questions pertaining to the character of the building are before us for consideration. The question here is merely one of the right of possession. If that is in defendant, as we hold, any other controversy as to the extent of plaintiff in error's right to restore the building does not arise in this proceeding.

We recognize that the question before us is not free from doubt. No other case brought to our attention presents this precise question. But we fail to see what other construction can be given to the provision in question, or that it can be given effect except the lessee alone had the right to terminate or continue the lease on failure of the lessor to restore the building. Hence, we think the lease imports an intention to demise an interest in the land.

There was no controversy over the essential facts. The testimony differed as to how much of the walls of the destroyed building was left standing. But whichever state of facts on that question be accepted, there was in law a total destruction of the building, "being such as destroyed the leased property in its character as a building." (*Humiston* case, *supra*, p. 520.) This was manifestly the view of the court below as indicated by its rulings on the propositions of law submitted to it. But a proper holding on all the propositions of law would have required the court to give a different construction to the lease and to find the right of possession in the defendant as a matter of law. The court's finding of the right of possession

depended not upon controverted facts but a legal construction of the lease. Its judgment, therefore, will be reversed.

*Reversed.*