## Davis v. Parker, et al.

(Decided November 13, 1923.)

### Appeal from Kenton Circuit Court.

Landlord and Tenant—Lessee Held Not Required to Rebuild in Case of Total .Destruction of Building—"Destroy."—A provision of a lease that lessors agreed that, if the buildings demised shall be destroyed in such a manner as to render them untenantable, lessors will immediately replace them in the same condition as they now are, held to require lessees to build in case of damage or injury rendering the buildings untenantable, but not in case of total destruction of the buildings, as in view of the qualifying words; the word "destroy" was not used in its literal sense, but in the sense of injury or damage.

JACKSON & WOODWARD for appellant.

S. D. ROUSE for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

By proper assignment appellant held a five-year lease on a building which was destroyed by fire. The lessors refused to rebuild and he sued them for damages. A demurrer was sustained to the petition and it was dismissed, and from that judgment he appeals.

The sole question raised is as to the proper construction of the lease. This is on a printed form, with the blanks and several clauses typewritten. The controversy is over one of these, which reads:

"Said lessors further agree that in the event the building hereby demised shall be destroyed by fire or tempest in such a manner as to render the same untenantable that the said lessors will immediately replace the buildings in the same condition as they now are, and that during the interim that the building or buildings are unoccu-

pied by the lessee that no rent shall be charged for such period.''

Appellees distinguish between two contingencies, one a total destruction calling for rebuilding, the other a partial destruction rendering the property untenantable and calling for repairs only, and insist that provision was made for but one, and that the language used clearly refers to the latter contingency.

Appellant claims that by this provision the parties intended that if the property was injured or damaged to such an extent as to render it untenantable, that it was to be restored by the lessor—that is, rebuilt if destroyed—repaired if rendered untenantable by an injury short of destruction; in other words, that destruction would certainly render the property untenantable, and that would include all lesser injuries producing such result, therefore, the parties did not separate the degrees of the injury, and as the building was destroyed it was the lessors' duty to rebuild.

The only other language in the lease calculated to throw light on the question is a printed provision reading in part: ''The lessee . . . shall pay rents unless said premises shall be destroyed or rendered untenantable by fire or unavoidable accident.''

It is clear that the parties had in mind both complete destruction and partial injury and in the printed provision separated the two and in apt terms provided an exemption from the payment of rent if either contingency happened; but it appears they desired to continue the contract beyond that period, and to effectuate this agreed that under the conditions named the lessors should replace the buildings. Now if they were willing to rebuild in the event of total destruction we can conceive of no valid reason why they would be unwilling to repair a lesser injury which merely rendered the building untenantable.

On the other hand, we can very well see how they might be willing to repair such injury and not be willing to rebuild in case of total destruction. These matters may have turned on the age and condition of the building, the sufficiency of the rent to authorize the erection of a new building, and many other considerations, though none appear in the record; nor can any be considered except to the extent of recognizing that there may have been a reason for a difference in the application of the reme-

dies. If the parties had agreed on a replacement of the building at all events, the natural thing for them to have done would have been to have separated the contingencies as they did in the provision for exemption of rents or to have used some similar language. Not only was this not done but there is no indication of any omission of words or inadvertence in phraseology. However, it may be said that if the language used can be construed as referring to a total destruction it is sufficiently comprehensive to include a lesser injury to the property, and the question for determination is, does the liability under the contract extend to total destruction or is it limited to damage or injury rendering the property intenantable?

The word "destroy" means "to annihilate," "to demolish," "to wipe out." The destroyed unit is not left it becomes non-existent. If the word stood alone in the sentence there could be no discussion or question, and if the parties had intended to rebuild in such contingency the natural inference is that they would have so left it. The fact that they did limit its meaning by qualifying words is a clear indication that they did not use it in its literal sense, and that they intended to express something short of total destruction.

Considering the matter in this light it is well known that in a loose and careless way the word destroy is frequently used in the sense of "injury" or "damage," as when a part of an article or thing is destroyed, it is referred to as "partly" or "partially" destroyed, "destruction in part" and kindred terms, all of which are in a sense analogous to the expression "destroyed . . . in such a manner as to render the same untenantable." These expressions may not be sanctioned by correct usage, but the other typewritten matter of the lease is not grammatically perfect, and we think the construction harmonizes with the instrument as a whole. But, as said in the opinion of the learned trial judge:

"If any doubt remains as to what the parties intended, it would seem to be removed by the language which follows. What is the lessor to do if the building is 'destroyed in such a manner as to be untenantable?' He is 'to immediately replace it in the same condition that it now is.' If the building is destroyed—wiped out—obviously the only thing the lessor can do is to build a new

structure. He could not possibly replace the old building in the condition in which it was at the time the lease was executed. If, however, the building was 'destroyed' (damaged) only to such an extent as to be untenantable, the lessor could readily make the repairs required to restore it to its former condition.

"It seems, therefore, to the court that the parties did not intend to require lessor to erect a new building if the old one was destroyed by fire. The other construction of the contract is the only one consistent with all of its terms and with the purpose which the parties apparently sought to serve."

Wherefore the judgment is affirmed.

Whole court sitting.