30 N.J. Super. 605 (1954)
105 A.2d 695
MORRIS PIVNICK AND BERTHA PIVNICK, PLAINTIFFS,
v.
SEABOARD SUPPLY CO., A NEW JERSEY CORPORATION, AND JOSEPH SOCHOR, TRADING AS IRVINGTON AUTO PAINTING & BODY REPAIR COMPANY, DEFENDANTS.
Superior Court of New Jersey, Essex County Court.
Decided May 25, 1954.
*608 Messrs. Riker, Emery & Danzig (Mr. Charles Danzig appearing), attorneys for plaintiffs.
Mr. William Krupkin, attorney for defendants.
GAULKIN, J.C.C.
Plaintiffs, landlords, seek summary judgment against defendant tenant Seaboard Supply Co., and sub-tenant Joseph Sochor, for possession of the leased premises.
The lease provides:
"* * * the tenant shall, in case of fire, give immediate notice thereof to the landlord who shall thereupon cause the damage to be repaired forthwith; but if the premises be so damaged that the landlord shall decide to rebuild, the term shall cease and the accrued rent be paid up to the time of the fire."
The affidavits show without dispute that the premises leased by plaintiffs to defendant Seaboard Supply Co. consisted, at the date of the lease, of a tract of land in Irvington upon which there were three frame buildings which adjoined one another with a total floor space of approximately 9,000 square feet, a shed with about 500 square feet, and a one-story concrete building, which defendants' memorandum says contained 2,600 square feet. The rent is $500 per month.
The concrete building and a portion of one of the frame buildings were sublet by defendant Seaboard Supply Co. to the defendant Joseph Sochor with the consent of the plaintiffs, subject to the terms of the principal lease. The balance of the premises, within and without the buildings, was occupied by defendant for the sale and distribution of roofing and building materials on December 24, 1953, when the frame buildings were damaged by fire. Plaintiffs gave defendants notice of their intention to rebuild, and of the consequent *609 termination of the lease. Defendants failed to vacate, and this action was begun.
Plaintiffs have filed an affidavit of Edward G. Mrozek, Superintendent of the Building Department of Irvington, in which he says:
"5. The buildings fronting on South 20th Street are entirely of frame construction. They have been so badly damaged by fire that they must be demolished, and they cannot be rebuilt unless they conform with the requirements of Section 104, paragraph 1 of the Building Code of the Town of Irvington. The Building Code of the Town of Irvington requires that only brick or concrete block buildings be erected in the zone, which is an industrial zone, where the above property is located.
6. The zoning ordinance of the Town of Irvington, Section 104, entitled `Major Alterations or Repairs to Existing Buildings' provides as follows:
`1. If alteration and/or repairs in excess of fifty percent of the assessed value of an existing building are made to such building, they shall be made to conform with the requirements given herein for new buildings. Any existing building which, for any reason whatsoever, requires repairs at any one time in excess of 50% of the assessed value thereof, not deducting from such value any loss caused by fire or any other reason, shall be made to conform to requirements given herein for new buildings.'
7. From my examination of the wooden structures on said premises, the frame buildings have been so badly damaged that repairs, if they were possible to be made out of wood, would exceed more than the 50% of the assessed valuation thereof, the assessed valuation being $2,800.00 for all of the frame buildings, exclusive of the sheds.
8. This department will not issue a permit to repair the buildings with materials similar to that of which they were constructed before the fire, as the materials must be fireproof, that is: brick or concrete block.
9. This deponent has notified Morris Pivnick that the frame buildings that were damaged by fire must be demolished and removed, and if he intends to rebuild that he must rebuild in conformity with the Town of Irvington Building Code.
10. The condition of the premises, as they now are, constitute a dangerous and hazardous condition, and unless the same is remedied without delay, it will become necessary for me to refer the same to the legal department of the Building Department for appropriate action."
These allegations are not denied in defendants' affidavits. The good faith of the superintendent of the building department is not challenged by defendants.
*610 Bernard J. Spingarn, who states he is an insurance counsellor and broker, in his affidavit says that the damage was as follows:
"a. Roofs in all three buildings are burnt through as a result of the fire and the buildings are exposed to the weather.
b. The roof beams which support the roofs to a large extent have been burnt through and are hanging in the air.
c. Nearly all the beams supporting the roofs which have not been burnt through are so badly charred as to be unusable and must be removed.
d. Partitions and supporting timber have been burnt through to a great extent and must be removed.
e. All electrical wiring has been destroyed and is unusable and must be removed.
f. Since the buildings are frame, the side walls of the buildings were burnt through by the fire and the window frames and sash are completely burnt through and destroyed in almost the entire three structures.
g. In building No. 2, the offices were located and they were finished with panelled walls and these panelled walls to a great extent destroyed and the ceilings destroyed and the buildings open to the weather."
Plaintiffs submitted photographs which appear generally to support these statements.
Mr. Spingarn further states in his affidavit that he placed the insurance for the plaintiffs, that the total value of the burned buildings before the fire was "not over $35,000"; that the total amount of insurance thereon was $26,500, and that the insurance company "considered the loss so great that they paid out the total amount of insurance, to wit: $26,500.00." There is nothing in the affidavit which establishes Mr. Spingarn's qualification to testify as an expert on sound value or on the dollar amount of the loss, and obviously the amount that the insurance company paid to the plaintiffs is not proof of the dollar amount of the damage, against the defendants.
However, defendants' affidavits do not deny most of Mr. Spingarn's description of the damage. As I read defendants' affidavits, the most that they say is that repair is possible, and rebuilding is not necessary. However, nowhere in defendants' affidavits is there any mention of the superintendent *611 of buildings, the correctness of his determination, or what to do about it. Nowhere in their affidavits do defendants dispute that the landlords truly intend to rebuild, nor do the affidavits otherwise challenge the good faith of the landlords in deciding to rebuild, except insofar as such challenge may be inferred from defendants' denial that rebuilding is necessary.
At common law a landlord could not terminate a lease because an accidental fire damaged or destroyed the leased premises. On the other hand, at common law, even when the premises were totally destroyed by fire, the tenant was not relieved of his obligations under a lease unless the lease so provided. Carley v. Liberty Hat Manufacturing Co., 81 N.J.L. 502 (E. & A. 1910).
In fact, the tenant's covenant to make repairs, or to return the premises in the same condition as upon the demise, obliged him to repair fire damage, and to rebuild in case of total destruction. Coles v. Celluloid Manufacturing Co., 39 N.J.L. 326 (Sup. Ct. 1877), affirmed 40 N.J.L. 381 (E. & A. 1878). The hardship of these rules upon tenants led to the adoption in most states of statutes such as our N.J.S.A. 46:8-6 and 7, which provide that (in the absence of lease stipulations to the contrary) whenever any leased building "shall be injured" by fire, the landlord shall "repair the same," whereas when any leased building "shall be totally destroyed" by fire, "the lease shall cease and come to an end." Since both these statutes were adopted for the benefit of tenants, they are properly construed liberally in favor of the tenants. Consequently, when a landlord seeks to take advantage of the terms of N.J.S.A. 46:8-7 to spell out a termination of the lease, the court will require him to prove a "destruction" as distinguished from damage.
But, as N.J.S.A. 46:8-6 and 7 expressly provide, the landlord and tenant are free to contract otherwise as they please. The landlord may stipulate that any fire, however slight, shall terminate the lease. In the case at bar, the parties have agreed upon a stipulation that "if the premises be so damaged that the landlord shall decide to rebuild" the *612 term shall cease. This language is the choice of the parties and is to be construed accordingly.
The question might be asked, what do these words mean? Do they mean that the landlords must prove to the satisfaction of a jury that a reasonable man, in the face of such damage, would elect to rebuild rather than repair? Or is it sufficient to show that in good faith they elected to rebuild?
In this case I do not think we need answer those questions, for here we have a much narrower issue. The superintendent of buildings has directed the landlords that they may not repair but must rebuild. May the landlords act upon that directive? Or must they contest it?
In my opinion the landlords may act upon that directive, and need not contest it under the facts in this case. Compare World Fire & Marine Insurance Co. v. Palmer, 182 F.2d 707, 17 A.L.R.2d 1217 (5 Cir., 1950), certiorari denied 340 U.S. 852, 71 S.Ct. 81, 95 L.Ed. 624 (1950).
Although defendants did not cite Scher v. Hartford Fire Insurance Co., 129 N.J.L. 421 (Sup. Ct. 1943), affirmed, memo, 130 N.J.L. 555 (E. & A. 1943), I have considered it. I do not think it prevents summary judgment for plaintiffs in this case. In the Scher case the lease provided:
"That the tenants shall, in case of fire, give immediate notice thereof to the landlords, who shall thereupon cause the damage to be repaired forthwith and if the damage shall be so extensive as to render the premises untenantable, the rent shall be proportionately paid up to the time of such damages and shall from thenceforth cease until such time as the premises shall be put in good order by the landlords, which shall be done with reasonable dispatch, but in case the destruction of the building by fire, or otherwise, shall be such as to render it necessary, in the opinion of the landlords, to rebuild the same, this lease shall, at the option of the landlords, and upon payment of the proportionate rent up to the time of such destruction, then and from thenceforth terminate."
It will be noted that in the Scher case the landlords had no option to rebuild except in case of "destruction." "Destruction" is quite different from "damage." In Booraem v. Morris, 74 N.J.L. 95 (Sup. Ct. 1906) the court pointed out that
*613 "* * * In construing the words `total destruction,' when used in leases to terminate the payment of rent, the courts have held that a partial destruction of the building, though it renders the premises, or a part thereof, untenantable for the purposes of the lease, does not terminate the lease, and relieve the tenant from liability for future rents. Id. 310; Wall v. Hinds, 4 Gray (Mass.) 256."
In the Scher case the court pointed out that "the undisputed fact is that the building was not so badly damaged as to require rebuilding * * * the building was not repaired because in the opinion of the landlords it would be economically unsound to do so because the building was old, was a monstrosity, triangular in shape and a more advantageous use could be made of the property." The court consequently properly held that under those facts, there was as a matter of law no "destruction," and the trial court had properly directed a verdict for defendant. Here, however, we are dealing with damage, not destruction. The damage has been substantial. Indeed, defendants' counsel argued that the damage was so substantial that defendants should not be required to pay the rent, or should at least have a substantial abatement, until the damage is repaired. In other words, if the landlords may not rebuild, they must repair before the defendants are obligated again to pay the stipulated rent. However, the superintendent of buildings has told the plaintiffs that they may not repair, but must rebuild; plaintiffs' builder Pallent in his affidavit swears the building cannot be repaired; and the landlords have decided to rebuild. If defendants prove everything they say in their affidavits at a trial, and no more, there still would be nothing to go to a jury.
Defendants seem to argue that since the land alone, and the remaining buildings, are still usable, the landlord may not terminate the lease for the purpose of rebuilding the damaged buildings. That argument was rejected in Carley v. Liberty Hat Mfg. Co., supra, 81 N.J.L., at page 505.
Defendants also argue that "the retention of the security by the landlord is an act which constitutes a waiver *614 of the right, if any, to terminate the lease as a result of the fire damage." I see no merit in this contention. Had defendants vacated the premises upon demand, defendants would have been entitled to the return of the deposit, since the lease would then have been terminated. However, the deposit was held by the landlord "as collateral security to secure * * * the full performance by the tenant of the terms and covenants required to be performed by the tenant under the terms of this lease * * *," and whether those terms and covenants had been fully performed could not be determined until the defendants vacated. The landlords were entitled to the vacation of the premises by defendants. The defendants failed to vacate when requested, and plaintiffs are entitled to damages for the period during which defendants unlawfully retained possession. The amount of those damages should be determined by a jury, and that sum will be deducted from the deposit held by the landlords and the monies deposited with the clerk of the court. The balance, if any, will be paid to defendants.
An appropriate judgment may be presented.