56 N.J. Super. 575 (1959)
153 A.2d 779
GEORGE W. SCHULTZ AND ELEANOR G. SCHULTZ, HIS WIFE, PLAINTIFFS,
v.
FRIEDA KNEIDL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 28, 1959.
*578 Mr. Nathan Bernstein for the plaintiffs (Messrs. Slingland, Houman & Bernstein, attorneys).
Mr. Archibald Kreiger for the defendant.
KOLOVSKY, J.S.C.
On March 25, 1957 the one-story brick building at 16 Wanaque Avenue, in the Borough of Pompton Lakes, occupied by plaintiffs for the conduct of their printing, publishing, and advertising business, was wrecked by fire. The damage and destruction to the front, rear and south walls, and to the roof, the roof beams and the steel beams of the building was so extensive that the borough building inspector ordered those three walls demolished. All that was left standing was the north wall, a party wall between 16 Wanaque Avenue and the building to the north, which wall, although cracked, could be and was repaired. The floor of the building was burned and charred. Affidavits submitted by defendant assert, and they are not contradicted, that the plumbing, electric and heating apparatus in the cellar were beyond repair; affidavits submitted *579 by plaintiffs, also uncontradicted, indicate that the cellar walls have not been destroyed and that "the cement floor in the rear 60% of the building still remains."
The premises, which are unoccupied, still are in the same condition as they were after the walls were demolished except that the debris has been removed.
Plaintiffs' possession of the demised premises, "lands and premises located at No. 16 Wanaque Av," was as lessees under a written lease executed by defendant as lessor, dated November 7, 1949, for a term scheduled to end on October 1, 1964.
Plaintiffs contend that defendant is liable to them in damages by reason of defendant having failed and refused to perform her alleged obligation to "repair, restore, and rebuild the building and premises."
The matter is before the court on cross-motions for summary judgment on the issue of liability.
If such alleged obligation and liability in damages do exist, they must be found in the provisions of the lease. Absent such lease provision, the asserted liability in damages finds no support in either the common law or the statutory law.
At common law, if there was not a contrary agreement on his part, a landlord was under no obligation to his tenant to repair or rebuild a leased building which was damaged or destroyed by fire. Lyon v. Buerman, 70 N.J.L. 620, 621 (Sup. Ct. 1904); Naumberg v. Young, 44 N.J.L. 331 (Sup. Ct. 1882); Heintze v. Bentley, 34 N.J. Eq. 562 (E. & A. 1881). On the contrary, unless a lease stipulation so provided, even complete destruction of the leased premises did not relieve the tenant of his obligation to pay rent, Carley v. Liberty Hat Mfg. Co., 81 N.J.L. 502 (E. & A. 1911); Pivnick v. Seaboard Supply Co., 30 N.J. Super. 605, 611 (Cty. Ct. 1954); and a lease provision requiring the tenant to deliver up the premises in the same condition as upon the demise, obligated him to repair fire damage and, in case of total destruction, to rebuild. Pivnick v. Seaboard *580 Supply Co., supra; Coles v. Celluloid Mfg. Co., 39 N.J.L. 326 (Sup. Ct. 1877), affirmed o.b. 40 N.J.L. 381 (E. & A. 1878).
Nor was an obligation which would subject him to damages imposed on the landlord by the statutes, now R.S. 46:8-6 and 7, enacted to relieve tenants from the hardship of the common-law rule.
The cited sections, which do not apply where the parties have otherwise stipulated in their agreement of lease, provide that if a building or buildings erected on leased premises are totally destroyed by fire or otherwise, without the fault of the lessee, the lease comes to an end, rent being payable up to the time of destruction (R.S. 46:8-7); if the building or buildings are injured by fire without the fault of the lessee, "the landlord shall repair the same as speedily as possible"; in default of such repair the rent ceases until such time as the building or buildings are put in complete repair (R.S. 46:8-6).
Neither section imposes any liability in damages on the landlord. Total destruction merely terminates the lease, and even R.S. 46:8-6, which expressly requires the landlord to repair fire damage as speedily as possible, does not make the landlord liable in damages for failure to do so. "The only penalty which it imposes upon him for failure to comply with this requirement is that the rent shall cease so long as he neglects to comply with this provision of the statute." Sayre v. Roseville Motor Co., 85 N.J.L. 10 (Sup. Ct. 1913). Accord, Lesser v. Kline, 101 Conn. 740, 127 A. 279 (Sup. Ct. Err. 1925).
The complaint alleges that defendant's covenant "to repair, restore and rebuild said building and premises" are to be found in article XIII and other provisions of the lease, but in their brief, plaintiffs rely, and properly so, solely on article XIII.
The other provisions of the lease are not pertinent to the issue presented. They include, inter alia, an agreement by the lessor to initially put the plumbing and heating system *581 in good working order and condition and to make any necessary repairs to the exterior of the premises, and an agreement by the lessees to make plumbing and heating repairs, interior repairs, excluding structural repairs and replacements, and an agreement to deliver up possession of the demised premises upon termination of the lease "in good order and repair and clean condition * * * excepting the effects of ordinary wear and tear and depreciation arising from lapse of time."
The lessor's covenant to make exterior repairs does not obligate her to rebuild the building which was destroyed by fire. Although a general and unqualified covenant by a lessor to repair has been held to impose on him the duty to rebuild the premises after destruction by fire or the elements, a limited covenant by the lessor to keep the exterior, roof, or other parts in repair does not bind him to rebuild the building in the event of its destruction by fire. 51 C.J.S. 1099, Landlord & Tenant § 368, p. 1099; 32 Am. Jur., Landlord & Tenant, § 709, p. 586; Annotation 38 A.L.R.2d 694; Miller v. Miller, 217 Miss. 650, 64 So.2d 739, 38 A.L.R.2d 674, 680 (Sup. Ct. 1953); Lesser v. Kline, 101 Conn. 740, 127 A. 279 (Sup. Ct. Err. 1925); see also, Stern v. Majestic Furniture Corp., 34 N.J. Super. 446 (Ch. Div. 1955).
The parties agree that a determination of the issues requires a construction of article XIII of the lease, and that such interpretation is a matter of law for the court. Crest Drug Stores, Inc. v. Levine, 142 N.J. Eq. 652, 655 (E. & A. 1948); Burnstine v. Margulies, 18 N.J. Super. 259 (App. Div. 1952); cf. Michaels v. Brookchester, Inc., 26 N.J. 379, 387 (1958).
Although plaintiffs' brief suggests that the lease was drawn by the landlord's attorney and therefore that "the construction of the lease should tend to favor the tenant rather than the landlord" (Burnstine v. Margulies, 18 N.J. Super. 259, 265 (App. Div. 1952)), it developed at oral argument that although the original draft of the lease was *582 prepared by the landlord's attorney, that draft was substantially revised at conferences held between the parties and their respective attorneys, so that the present lease, 16 pages long and containing 29 articles, is the product of the joint efforts of the attorney for the lessor and the attorney for the lessees. There is no basis for the application of the quoted rule of construction. "The rule is never applied to words which are the common language of both parties, even though they are put in writing by one of the parties." 17 C.J.S. Contracts § 324, p. 754; Beck v. F.W. Woolworth Co., 111 F. Supp. 824 (D.C. Iowa 1953).
Article XIII of the lease provides:
"(a) In the event that the demised premises shall be partially damaged or destroyed by a casualty, the Lessors will, at the option of the Lessees, with all due diligence, at their own cost and expense, repair, restore and rebuild the demised premises, so that the premises after such work shall be substantially the same as prior to such damage. It is expressly agreed that if a partial destruction, as above described, shall occur, the rent hereby reserved shall not abate unless the premises shall be thereby rendered untenantable so as to preclude the conduct of the business therein. If the premises should be thus rendered untenantable, the rent shall abate until the premises can again be used for printing, publishing and advertising purposes. The requirement of the diligence of the Lessors in restoring the premises shall be subject to a reasonable opportunity to adjust loss with insurance companies, and to the Lessors' inability to obtain labor and material where such inability is not due to the Lessors' own fault.
(b) In the event that the demised premises shall be partially damaged or destroyed by a casualty so as to effectively limit the use of a portion of the premises for the business of the Lessees, then the rent shall abate for the portion of the premises effectively limited until such time as effective use of the premises is completely restored.
(c) In the event that the Lessors shall not have repaired a partial destruction of the premises within 90 days or a complete destruction of the premises within 120 days after the date of destruction, then the Lessees shall have the option of terminating this lease by serving written notice upon the Lessors of their intention to terminate this lease. Said notice shall contain a specified date of termination and upon service of such notice upon the Lessors by the Lessees, said date of termination shall terminate this lease as if said termination date had originally been fixed as the expiration date of this lease."
*583 Under paragraph (a) of article XIII, if the demised premises "are partially damaged or destroyed by a casualty," the lessors are required, if the lessees so elect  "at the option of the lessees"  to, "with all due diligence * * * repair, restore and rebuild the demised premises, so that the premises after such work shall be substantially the same as prior to such damage."
Plaintiffs argue that the word "partially" modifies only the word "damaged" and not the word "destroyed" and would construe the paragraph as if the opening phrase read: "In the event that the demised premises shall be partially damaged or in the event that the demised premises shall be destroyed * * *." The construction contended for finds no support in the language used, for it is apparent that the word "partial" was intended to modify both the word "damaged" and the word "destroyed." This is confirmed by the parties' own language in the second sentence of paragraph (a) which refers specifically to a "partial destruction" and provides that in such case rent is not to abate unless the premises are rendered untenantable so as to preclude the conduct of business therein, in which case rent abates until the premises can again be used for printing, publishing, and advertising purposes.
Paragraph (a) gives the lessees the option to require the lessors to repair, restore, and rebuild the demised premises when they are partially damaged or destroyed; it does not give the lessees such option in the case of total destruction. A lease which imposes an obligation on the landlord to repair in case of partial destruction by fire, but which is silent as to total destruction, does not obligate the landlord to rebuild in case of total destruction, Davis v. Parker, 200 Ky. 847, 255 S.W. 836 (Ct. App. 1923). That different considerations are involved in a case of total destruction than in a case of partial destruction or damage is recognized not only by the case law but by our statute law. Compare R.S. 46:8-6 with R.S. 46:8-7.
*584 The court's function in construing a lease is to ascertain and give effect to the mutual intention of the parties as manifested by the terms of the lease. 51 C.J.S. Landlord & Tenant § 232, p. 850; William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 485 (Ch. Div. 1953), affirmed in part and reversed in part on other grounds, 29 N.J. Super. 316 (App. Div. 1954).
The court cannot and "will not make a different or a better contract than the parties themselves have seen fit to enter into." Washington Construction Co., Inc. v. Spinella, 8 N.J. 212, 217 (1951).
The only reference to total or complete destruction is found in paragraph (c) of article XIII, giving the lessees the option of terminating the lease if "the lessors shall not have repaired a partial destruction of the premises within 90 days or a complete destruction of the premises within 120 days after the date of the destruction."
Plaintiffs, in effect, contend that the language of paragraph (c) creates by implication an affirmative obligation on the landlord to rebuild in case of total or complete destruction. I do not agree.
It has been held in this State that a landlord's obligation to repair may arise by implication from the terms of the lease. (See Michaels v. Brookchester, Inc., 26 N.J. 379, 390 (1958), where it was held that the circumstances there shown, including the actual conduct of the parties during the term of the lease, justified the conclusion that the parties intended that the landlord of a multi-family apartment house should repair a defective kitchen cabinet door.)
But as Judge Speakman said in William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 487 (Ch. Div. 1953), affirmed in part and reversed in part on other grounds, 29 N.J. Super. 316 (App. Div. 1954):
"* * * it is universally recognized that an implied covenant can arise only by necessary implication from specific language of a contract or because it is indispensable to carry into effect the intention expressed in the contract. * * *
*585 Terms are to be implied in a contract, not for the reason that they are just or reasonable, but rather for the reason that the parties must have intended them and have only failed to express them because they are too obvious to need expression * * *, or because they are necessary to give business efficacy to the contract as written, or to give the contract the effect which the parties, as fair and reasonable men, presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto. See 12 Am. Jur., Contracts, sec. 239; 14 Am. Jur., Covenants, Conditions and Restrictions, sec. 14."
In view of these settled rules, there is no justification for the implication of the covenant contended for by plaintiffs.
The parties are "presumed to have contracted with reference to the existing law" (Silverstein v. Keane, 19 N.J. 1, 13 (1955)) and are charged with notice that if there is no contrary agreement, R.S. 46:8-7 does not impose any obligation on a landlord to restore a building which has been totally destroyed by fire or other casualty.
Moreover, paragraph (c) gives the lessees the option to terminate the lease for failure to repair partial destruction within 90 days, as well as for failure to repair complete destruction in 120 days. Yet to create an affirmative obligation on the lessor to repair partial destruction, the parties set forth an express covenant to that effect in paragraph (a) of article XIII. It is, therefore, evident that if the parties had intended that an affirmative obligation to repair was to be imposed on the lessor in case of complete destruction, a covenant to that effect would also have been inserted in the lease. 51 C.J.S. Landlord & Tenant § 236, p. 864.
An option to the tenant to terminate the lease if the landlord does not rebuild a totally destroyed building within a specified number of days does not create an affirmative obligation on the part of the landlord to rebuild in case of total destruction. Solomon v. Neisner Bros., 93 F. Supp. 310 (D.C. Pa. 1950), affirmed o.b. 187 F.2d 735 (3 Cir. 1951).
*586 The same is true with respect to other covenants inserted in a lease for the relief of a tenant. So, uniformly it has been held that no obligation is imposed on the lessor to restore the premises by "a provision in a lease that should the property be destroyed by fire so as to be untenantable the conditions of the lease, such as collection of rent, shall cease until repairs are made or until the premises are rebuilt." 51 C.J.S. Landlord & Tenant § 368(e), p. 1098; see also Annotation, 38 A.L.R.2d 709 and cases cited; Solomon v. Neisner Bros., supra; or "by a covenant binding the tenants to return premises in as good order as when received * * * `ordinary wear, fire, and other unavoidable casualties excepted.'" 51 C.J.S. Landlord & Tenant § 368(b), p. 1085.
In view of the option given the lessees to terminate the lease in the event of complete destruction and failure to restore within 120 days, the provisions of R.S. 46:8-7, under which the lease would automatically terminate in case of total destruction, do not apply; the parties have otherwise stipulated. R.S. 46:8-7; Pivnick v. Seaboard Supply Co., 30 N.J. Super. 605 (Cty. Ct. 1954); Kinsmann v. Fisch House Furnishing Co., 3 N.J. Misc. 1243 (Sup. Ct. 1925).
Since the premises had become untenantable, the lessees were relieved of the obligation to pay rent by virtue of the third sentence of paragraph (a) of article XIII. It is of no significance that that paragraph refers to partial destruction; the untenantability of the premises is the controlling factor. If untenantability resulting from partial destruction results in total rent abatement, a fortiori does it have that effect where it results from total destruction.
If the lessor restores a completely destroyed building, the lessee's obligation to pay rent resumes. But if the building is not restored, the rent continues to be abated and if the building is not completely rebuilt within 120 days then, by paragraph (c) of article XIII, the lessees have the option of terminating the lease. This option enables the lessees, *587 in case the building is rebuilt after 120 days, to choose either to resume occupancy and payment of rent or to terminate the lease if resumed occupancy is no longer desirable or of advantage to them.
The lease does not give the lessor an option to terminate in the event of complete destruction. Unless the lessees exercise their option to terminate before then, the lease will continue until the expiration of its term, with rent remaining abated unless and until the building is restored so that the premises can again be used for printing, publishing, and advertising purposes.
In view of my determination that the lease imposes an obligation on the lessor to repair, restore, and rebuild in case of partial destruction but not in case of total or complete destruction, it becomes necessary to determine the nature of the destruction in the instant case.
The proofs submitted establish, as a matter of law (R.R. 4:58-3) that there was a total destruction. They show that as a result of the fire the building, in a practical sense, had lost its character as a building so that restoration would be practically the equivalent of a new building. Such a condition constitutes total destruction; a showing of annihilation is not required. Annotation, 61 A.L.R.2d 1445, supplementing Annotation, 118 A.L.R. 106; 32 Am. Jur., Landlord & Tenant, § 506, p. 412; Standard Industries, Inc. v. Alexander Smith, Inc., 214 Md. 214, 133 A.2d 460, 61 A.L.R.2d 1433, 1441 (Ct. App. 1957); General Outdoor Advertising Co., Inc. v. Wilson, 276 App. Div. 63, 93 N.Y.S.2d 131, 134 (App. Div. 1949); cf. Booraem v. Morris, 74 N.J.L. 95 (Sup. Ct. 1906); Scher v. Hartford Fire Ins. Co., 129 N.J.L. 421 (Sup. Ct. 1943), affirmed o.b. 130 N.J.L. 555 (E. & A. 1943).
Plaintiffs' own proofs show that all that was left standing was the party wall, the other walls being so badly damaged that they had to be removed in accordance with the directive of the borough building inspector, a directive which, it is conceded, defendant had to comply with. Pivnick *588 v. Seaboard Supply Co., 30 N.J. Super. 605, 612 (Cty. Ct. 1954). The fact that the cellar walls had not been destroyed and that the cement floor in the rear 60% of the building still remains does not create a fact issue on the question of total destruction; the destruction was still, in law, total and complete. 32 Am. Jur., Landlord & Tenant, § 506, p. 412; Szurlecki v. Oppenheimer, 204 Ill. App. 359 (App. Ct. 1917), affirmed 283 Ill. 525, 119 N.E. 643 (Sup. Ct. 1918); Heart of America Lumber Co. v. Belove, 111 F.2d 535, 130 A.L.R. 658 (8 Cir. 1940).
In view of the determinations made, defendant's motion for summary judgment is granted and plaintiffs' motion denied in so far as they apply to plaintiffs' action for damages.
Disposition of defendant's counterclaim for rent of $161.25 allegedly due from plaintiffs must await further proceedings. The motions do not refer specifically to the counterclaim and the briefs submitted did not argue the issue of the alleged rent claim, although plaintiffs' affidavit denying the indebtedness stands uncontradicted.